UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SOTHEARY TAING BARD,

   Plaintiff,

v.                                           Case No.:   3:22-cv-261-DNF

ACTING COMMISSIONER OF
SOCIAL SECURITY,

   Defendant.

## OPINION AND ORDER

Plaintiff Sotheary Taing Bard seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

   **I.**   **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

      **A.**   **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C. Procedural History

Plaintiff filed an application for a period of disability and disability insurance on November 7, 2019, alleging disability beginning on December 6, 2018. (Tr. 106, 257-60). Plaintiff later amended her onset date to February 4, 2020. (Tr. 15). The applications were denied initially and on reconsideration. (Tr. 106, 122). Plaintiff

requested a hearing, and on August 11, 2021, a hearing was held before Administrative Law Judge William Greer ("ALJ"). (Tr. 31-55).[1] On September 1, 2021, the ALJ entered a decision finding Plaintiff not under a disability from February 4, 2020, the amended alleged onset date, through September 30, 2020, the date last insured. (Tr. 15-24).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on January 7, 2022. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on March 9, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 9).

### D.  Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 4, 2020, through the date last insured of September 30, 2020, but did find that her medical records showed that she had "endorsed working as a cleaner" during the relevant period. (Tr. 17). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments:

---

[1] A prior hearing was held on January 13, 2021 before ALJ John Meisburg, Jr., but ALJ Meisburg retired before rendering a decision and ALJ Greer conducted a de novo hearing on August 11, 2021. (*See* Tr. 33, 56-70).

"spine disorders; arthropathy; fibromyalgia; osteoarthritis; tachycardia; and hearing loss." (Tr. 17). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 18).

Before proceeding to step four, the ALJ found that through the date last insured, Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except could sit for up to seven hours in an eight hour work day, one hour at a time, stand or walk up to four hours a day, up to 30 minutes at one time; lift up to twenty pounds occasionally and 10 pounds frequently; no crawling, occasional stairs; no ladders, ropes, or scaffolds; no crouching, occasional kneeling, reaching above shoulder level. Instructions may not be heard if spoken in an environment louder than an office.

(Tr. 18).

At step four, the ALJ determined that Plaintiff was incapable of performing her past relevant work as a hair stylist. (Tr. 22). At step five, the vocational expert testified that considering Plaintiff's age (45 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date last insured. (Tr. 22-23). Specifically, the vocational

expert found that through the date last insured, Plaintiff could have performed such occupations as:

(1)  order clerk, food and beverage, DOT 209.567-014,[2] sedentary, SVP 2

(2)  call-out operator, DOT 237.367-014, sedentary, SVP 2

(3)  electronics worker, DOT 726.687-010, light, SVP 2.

(Tr. 23). The ALJ concluded that Plaintiff had not been under a disability from February 4, 2020, the amended alleged onset date, through September 30, 2020, the date last insured. (Tr. 24).

## II.  Analysis

On appeal, Plaintiff raises two issues. As stated by Plaintiff they are: (1) whether the Commissioner erred in not identifying and considering Plaintiff's severe impairments of carpal tunnel syndrome and bilateral knee pathologies in formulating Plaintiff's RFC; and (2) whether the ALJ erred in ignoring restrictions established in the post-hearing consultative examination conducted by Dr. Lazo. (Doc. 13, p. 12, 14).

### A.  Severe Impairments

Plaintiff argues that the ALJ's decision failed to identify all of Plaintiff's severe impairments. (Doc. 13, p. 12). Plaintiff claims that the ALJ erred in not finding Plaintiff's bilateral knee pathologies and carpal tunnel syndrome/peripheral

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

neuropathy were medically determinable impairments that significantly limited her ability to perform basic work-related activities. (Doc. 13, p. 12).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§ 404.1522(a), 416.922(a). In other words, a severe impairment is an impairment or combination thereof that *significantly* limits a claimant's abilities to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. The claimant bears the burden at step two of proving that she has a severe impairment or combination of impairments. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment ... is enough to satisfy the requirement of step two and allow the ALJ to proceed to step

three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted).

With this standard in mind, even if the ALJ should have characterized Plaintiff's bilateral knee pathologies and carpal tunnel syndrome/peripheral neuropathy as severe impairments, any error is harmless because the ALJ characterized other impairments – spine disorders; arthropathy; fibromyalgia; osteoarthritis; tachycardia; and hearing loss – as severe. (Tr. 13). The ALJ then advanced to step three of the sequential evaluation. *See Ball*, 714 F. App'x at 993. With step two satisfied, the issue then becomes whether the ALJ considered all of Plaintiff's impairments, including her bilateral knee pathologies and carpal tunnel syndrome/peripheral neuropathy in assessing the RFC.

Plaintiff argues that after her carpal-tunnel release surgeries, she still experienced hand and upper extremity pain, paresthesia, neuropathy, and weakness. (Doc. 13, p. 12). Plaintiff cites instances when she was diagnosed with paresthesia of the upper extremity and pain in the hands and fingers. (Doc. 13, p. 4, 12).

The ALJ considered Plaintiff's fibromyalgia and osteoarthritic pain, including the records from her treating rheumatologist, Steven Matthews, M.D. (Tr. 19-20). The ALJ also considered Plaintiff's complaints of paresthesia of the upper extremity when she presented to Saint Vincent's Ambulatory Care for this complaint. (Tr. 20-21). The ALJ noted that while at the Saint Vincent's, she demonstrated full strength in the upper extremities. (Tr. 20).

In addition, the ALJ considered Plaintiff's testimony on her inability to work due to her problems with her hands. (Tr. 19).[3] He noted her testimony about her history of carpal tunnel syndrome surgery and her ongoing joint pain in her hands secondary to rheumatoid arthritis, fibromyalgia, and lupus. (Tr. 19). He considered her testimony about pain in her fingers even with medication and her knuckle pain with numbness and tingling. (Tr. 19). He also considered her testimony that she dropped objects, such as cup. (Tr. 19). The ALJ found her statements about the

---

[3] Plaintiff does not challenge whether the ALJ erred in consideration of her subjective complaints. Thus, this issue is waived. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (finding claimant waived issue because he did not elaborate on claim or provide citation to authority on claim); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022).

intensity, persistence, and limiting effects of her symptoms conflicted with her treatment regimen and her reported symptoms not as severe or limiting as she described. (Tr. 19). The ALJ based this finding in part on a more recent 2021 physical consultative examination, which showed no acute distress as to grip, a grip strength of 5/5 bilaterally, good range of motion of the hands, and no impairment of fine or gross dexterity bilaterally. (Tr. 19). Thus, the ALJ considered Plaintiff's carpal tunnel syndrome post surgery in the decision and in assessing the RFC.

Plaintiff also argues that the ALJ failed to identify and consider Plaintiff's bilateral knee pathology in formulating the RFC. (Doc. 13, p. 13). Plaintiff contends the ALJ erroneously stated that Plaintiff did not seek treatment for her complaints of knee pain until after the date last insured. (Doc. 13, p. 13). In the decision, the ALJ stated, "The claimant did not seek treatment for her complaints of knee pain until after the date last insured . . .." (Tr. 21). Upon review of the medical evidence, prior to the date last insured of September 30, 2020, Plaintiff complained of pain in both knees with motion and her knees were found to be tender. (Tr. 583, 652, 655).

Even if the ALJ's statement about seeking treatment was unsupported by the evidence, the ALJ did not stop there. The ALJ also found:

> Nonetheless [the] undersigned notes the claimant did not display significant symptomology or have significant findings with imaging. X ray of the right and left knees was performed on October 8, 2020 and showed only mild tri-compartmental joint space loss (Exhibit B24F/23). MRI showed quadricep fat pad impingement syndrome and small joint effusion with a

> ruptured popliteal cyst but no evidence of internal derangement (Exhibit B24F/20).

(Tr. 21). Thus, the ALJ considered Plaintiff's bilateral knee pathologies in the decision and assessing the RFC, when finding that Plaintiff did not display significant symptoms nor did the objective evidence support significant findings during the relevant period.

Lastly, Plaintiff also appears to argue that the ALJ's finding that Plaintiff suffers from "spine disorders" is not a fair representation of her true lumbar pathologies. (Doc. 13, p. 14). Plaintiff claims that an MRI showed a worsening of the lumbar spine compared to an earlier MRI and additional pathologies. (Doc. 13, p. 14). Without citation to authority, Plaintiff claims this misstating of her spinal problems is clear error. This argument is unavailing. The ALJ discussed Plaintiff's spinal disorders in the decision and referred to the lumbar area when appropriate. (Tr. 20). Substantial evidence supports the ALJ's finding at step two of the sequential evaluation and the RFC determination.

Moreover, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5

F.4th 1315, 1320 (11th Cir. 2021). Here, the ALJ's decision is supported by substantial evidence and he applied the correct legal standard.

### B. Consultative Examiner Ciceron V. Lazo, M.D.'s Opinion

Plaintiff argues the ALJ's finding that consultative examiner Dr. Lazo's opinion was unpersuasive was unsupported by the record. (Doc. 13, p. 14). Plaintiff claims the ALJ's finding that Plaintiff can perform a limited range of lightwork conflicts with Dr. Lazo's opinion. (Doc. 13, p. 14). Plaintiff also claims that the complete record evidence that Dr. Lazo reviewed provides considerable support for his finding on Plaintiff's restrictions and limitations. (Doc. 13, p. 14).

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the

length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your

impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

On February 18, 2021, Dr. Lazo examined Plaintiff. (Tr. 801-804). Then on March 1, 2021, Dr. Lazo completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 793-800). Early in the decision, the ALJ summarized a portion of Dr. Lazo's findings, which conflicted with Plaintiff's subjective complaints:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant's treatment regimen and reported symptoms to her providers are not as severe or limiting as described in her testimony. The claimant's clinical findings do not show her presenting in any acute distress or with sustained problems in gait, grip, or standing up. Indeed, the recent 2021 physical consultative examination of the claimant revealed grip strengths of 5/5 bilaterally with good range of motion of the shoulders and hands with "no impairment of fine or gross dexterities, bilaterally." Leg strengths were 5/5 bilaterally with 5/5 feet strength. Straight leg test was negative, and the claimant could perform all walking and squatting without difficulty (Exhibit B28F/12). The claimant has no other physical manifestations of pain, such as elevated blood pressure, irritability, abnormal mood, lack of focus and concentration, or sleepiness.

(Tr. 19). Later in the decision, the ALJ further summarized Dr. Lazo's examination findings and opinion:

> Finally, the claimant was physically examined by Dr. Ciceron Lazo at the request of this agency in 2021. The clinical findings noted the claimant to be in no obvious physical distress with no difficulty getting into or out of the examination room table and chair, no significant joint deformity of the upper or lower extremities, and no impairment of gait. Based on claimant report, Dr. Lazo assessed the claimant with low back pain with radiculitis to the left leg and neck pain with intermittent radiculitis to the arm (Exhibit B28F). . . .
>
> The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: Dr. Lazo opined that the claimant could lift and carry to 10 pounds occasionally and never lift or carry any weight frequently. The claimant was opined to be able to sit for a total of 25 minutes in an eight-hour work[-]day, stand for one hour, and walk for 20 minutes with the need to sit after walking. Reaching, handling, fingering, and feeling was opined to be limited in both upper extremities. Postural activities were opined to be limited to occasionally.
>
> The undersigned finds the opinions of Dr. Lazo unpersuasive as he provided no support for the restrictive functioning opined. Dr. Lazo did not, though requested, identify the particular medical or clinical findings to support his assessments or any limitations, and he did not explain why the findings supported the assessment. Additionally, the opinions are not consistent with the stable findings in the record for the period at issue or the limited mild degenerative findings shown in imaging.

(Tr. 21-22).

The ALJ reasoned that Dr. Lazo's examination findings do not support the extreme limitations he included in his opinion. (Tr. 21-22). For example, the ALJ found Dr. Lazo's examination revealed grip strength of 5/5 bilaterally, arm strength

of 5/5 bilaterally, good range of motion of the shoulders and hands, and no impairment of fine or gross dexterities bilaterally. (Tr. 803). Dr. Lazo found good range of motion in the hips, knees, ankles, and feet with leg strength of 5/5 bilaterally, foot strength of 5/5 bilaterally, and gait and station not impaired. (Tr. 803). Dr. Lazo also found Plaintiff had no difficulty getting on and off the exam table. (Tr. 802).

Yet, Dr. Lazo restricted Plaintiff to occasionally reaching, fingering, and pushing/pulling, and frequently handling and feeling. (Tr. 795). The only explanations is a note in the margin stating, "due to numbness." (Tr. 795). And Dr. Lazo limited Plaintiff to sitting for thirty minutes, standing for ten minutes and walking fifteen to twenty minutes at a time, with sitting for a total of twenty-five minutes, standing for a total of one hour, and walking for a total of twenty minutes in an eight-hour workday. (Tr. 794). The only explanation added was that Plaintiff needed to sit down every twenty minutes and needed to "sit down before returning." (Tr. 794). Plus, Dr. Lazo limited Plaintiff to occasionally lifting and carrying ten pounds and never lifting and carrying more than that amount. (Tr. 793). For each of these limitations, Dr. Lazo did not identify any medical or clinical findings that supported these assessments even though the form requested that information. (Tr. 793-95). As the ALJ found, Dr. Lazo failed to support his opinion that Plaintiff had

extreme limitations in lifting, carrying, sitting, standing, walking, reaching, handling, and fingering. (Tr. 21-22).

The ALJ also addressed the consistency of Dr. Lazo's opinion in finding it inconsistent with the stable findings of record during the relevant period and the limited mild degenerative findings shown in imaging. (Tr. 22). In support, the ALJ noted various evaluations showing normal muscle tone, normal gait, and normal strength. (Tr. 20). As the ALJ noted, in August 2020, Plaintiff reported she had 100% improvement in her back symptoms from an injection and was able to complete her daily activities without exacerbation of pain. (Tr. 20). At the September 2020 hospital visit, Plaintiff exhibited full strength in upper and lower extremities and normal gait and station. (Tr. 20-21). The ALJ also considered the imaging and found it did not display significant symptomology or have significant findings with imaging. (Tr. 21).

The ALJ addressed the supportability of Dr. Lazo's opinion and found the opinion unsupported by his examination. The ALJ also addressed the consistency of Dr. Lazo's opinion with other medical evidence of record and found it inconsistent. Substantial evidence supports the ALJ's persuasiveness finding of Dr. Lazo's opinion and the ALJ did not err.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 13, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties